Chuck Lee MATHENIA, Appellant,

v.

Paul DELO, Appellee.

No. 95–3195.

United States Court of Appeals,
Eighth Circuit.

Submitted June 12, 1996.

Decided Nov. 13, 1996.

Lawrence Fleming, St. Louis, MO, for appellant.

Stephen Hawke, Jefferson City, MO, for appellee.

Before BEAM, BRIGHT and HANSEN, Circuit Judges.

BEAM, Circuit Judge.

Chuck Mathenia, under sentence of death, appeals the district court's[1] denial of his request for relief under Rule 59(e) of the Federal Rules of Civil Procedure. We affirm.

## I. BACKGROUND

This case is before us for a second time. *Mathenia v. Delo*, 975 F.2d 444 (8th Cir. 1992), *cert. denied*, 507 U.S. 995, 113 S.Ct. 1609, 123 L.Ed.2d 170 (1993). The relevant facts are largely set out in our prior opinion and will be repeated here only to the extent necessary. Mathenia was convicted of two

---

1. The Honorable Carol Jackson, United States District Judge for the Eastern District of Missouri.

counts of capital murder for the brutal stabbing deaths of Daisy Nash and her mentally impaired sister Louanna Bailey. Mathenia knew both of the sisters and, in fact, had been living with Daisy for some time. Several months before the murders, Mathenia had been arrested for allegedly twice raping Louanna. Although the charges were later dropped, Mathenia had vowed revenge on the two sisters, including telling his step-sister that he should kill Louanna for having him arrested.

On the day of the murders, Mathenia had been drinking heavily. After returning to Daisy's home, he and Daisy had a heated argument. Mathenia violently beat Daisy and stabbed her to death. He then proceeded to Louanna's home, several blocks away. After telling Louanna that he had just killed Daisy, Mathenia stabbed Louanna to death. Mathenia was later arrested for and confessed to the murders. Mathenia was convicted of both murders and was sentenced to death. As an aggravating factor, the jury found that the murders were "outrageously or wantonly vile, horrible or inhuman in that [they] involved torture or depravity of mind." [2]

Mathenia's convictions and sentences were affirmed on direct appeal and his state post-conviction relief was denied. *State v. Mathenia,* 702 S.W.2d 840 (Mo.), *cert. denied,* 477 U.S. 909, 106 S.Ct. 3286, 91 L.Ed.2d 574 (1986); *Mathenia v. State,* 752 S.W.2d 873 (Mo.Ct.App.1988), *cert. denied,* 488 U.S. 1019, 109 S.Ct. 819, 102 L.Ed.2d 809 (1989). Mathenia then filed a petition for a writ of habeas corpus in the district court pursuant to 28 U.S.C. § 2254. The district court denied the petition. This court affirmed, holding that: (1) Mathenia's trial counsel was not constitutionally ineffective; (2) although the statutory aggravating circumstance was facially vague, it was properly limited by the finding of torture; and (3) Mathenia's mental retardation did not prevent him from having

the degree of culpability necessary to justify capital punishment. *Mathenia,* 975 F.2d at 453.

Following our denial of habeas relief, Mathenia filed a motion for relief from the district court's judgment pursuant to Rule 60(b)(6) of the Federal Rules of Civil Procedure. Rule 60(b) allows for relief from a judgment for several enumerated reasons, including mistake and fraud. Subsection (b)(6) provides for relief from a judgment for "any other reason justifying relief." [3] Fed. R.Civ.P. 60(b)(6). In the motion, Mathenia alleged that new, but previously unavailable, evidence established both prejudice resulting from his counsel's ineffective assistance and his innocence of capital murder.

The district court construed the Rule 60 motion as a second petition for habeas corpus relief. Because the arguments raised in the motion had been presented in the prior habeas action, the district court determined the claims were successive. Thus, the district court found it could only reach the merits of petitioner's claims on a showing of either cause and prejudice or a miscarriage of justice. Finding neither, the district court denied Mathenia's Rule 60 motion. *Mathenia v. Delo,* No. 89–0088–C at 8 (E.D.Mo. June 2, 1993) (June Order).

The district court applied the standard announced in *Sawyer v. Whitley* to determine whether the miscarriage of justice exception had been satisfied. *Sawyer v. Whitley,* 505 U.S. 333, 350, 112 S.Ct. 2514, 2524–25, 120 L.Ed.2d 269 (1992) (habeas petitioner must show, by clear and convincing evidence, that but for a constitutional error, no reasonable juror would have found him guilty). The district court reviewed the mental examination evidence and found that Mathenia had not shown actual innocence. June Order at 7.

Mathenia originally appealed the denial of Rule 60(b)(6) relief, but later moved to dis-

---

2. The jury also found, with regard to Louanna's murder, the additional aggravating circumstance that her murder was committed to prevent her from testifying in a judicial proceeding.

3. Mathenia's motion for relief from judgment, although brought under subsection (b)(6), was largely based on allegations of new evidence

(mental examinations). Such motions based on new evidence must be made within one year of the judgment from which relief is sought. Fed. R.Civ.P. 60(b). Mathenia's motion would have been untimely under subsection (b)(3). Mathenia presumably relied on subsection (b)(6) to avoid the time constraints of subsection (b)(3).

miss that appeal. He then filed a timely motion under Rule 59(e) to alter or amend the June 2, 1993 judgment. In his Rule 59(e) motion, Mathenia objected to many of the legal conclusions made by the district court in its June order, including the use of the *Sawyer v. Whitley* actual innocence standard, and the correctness of the district court's denial of mental examinations prior to his habeas corpus hearing.

Mathenia's actual innocence argument relied on the United States Supreme Court's decision in *Schlup v. Delo*, which was decided after the district court's denial of Rule 60 relief. *Schlup v. Delo*, — U.S. —, —, 115 S.Ct. 851, 865, 130 L.Ed.2d 808 (1995). *Schlup* held that the less stringent *Murray v. Carrier* standard, instead of the *Sawyer* standard, was to be applied to claims that a constitutional error has resulted in the conviction of one who is actually innocent of the crime. *Id.* (citing *Murray v. Carrier*, 477 U.S. 478, 496, 106 S.Ct. 2639, 2649–50, 91 L.Ed.2d 397 (1986) (habeas petitioner must show that a constitutional violation has probably resulted in the conviction of one who is actually innocent to avoid a procedural bar to consideration of the merits of constitutional claims)).

With regard to the mental examination argument, Mathenia alleged that the district court's denial of mental examinations in conjunction with the first habeas corpus action, was cause to excuse his failure to fully develop the evidence in that proceeding. Mathenia's counsel had requested such examinations to help in the presentation of the ineffective assistance of trial counsel claim. Two pre-trial mental examinations had shown that although Mathenia was mildly mentally retarded, he was not suffering from a mental disease or defect. At the habeas level, the district court reviewed the record containing those evaluations and denied further mental evaluations, stating that Mathenia's present mental state was not relevant to the claim of ineffective assistance of trial counsel. Mathenia alleges that such denial was erroneous and excuses his previous failure to more fully develop this argument.

The district court found that these arguments "could have been, and in fact were, presented to and rejected by the Court in the June Order." *Mathenia v. Delo*, No. 4:89–CV–88 at 3 (E.D.Mo. August 10, 1995) (August Order). The district court then reanalyzed the mental examination evidence under the *Schlup/Carrier* standard and again found that Mathenia had not shown actual innocence. The court also determined that its prior denial of mental examinations was not cause to excuse Mathenia's procedural default. Consequently, the district court denied Rule 59(e) relief. August Order at 5. Mathenia now appeals that order.

## II. DISCUSSION

In this procedurally intricate appeal, Mathenia attempts to introduce evidence that was not presented in his first habeas proceeding through a Rule 59(e) motion to amend a judgment from an earlier Rule 60 proceeding. The evidence includes proof of his brain damage and mental retardation. This psychological evidence largely comes from the reports of three physicians. Using this evidence, Mathenia attempts to show that his trial counsel was ineffective. He also asserts that the evidence shows that he was not capable of achieving the requisite mental state for capital murder. Our prior decision disposes of both of these issues. *See Mathenia*, 975 F.2d at 447, 453.

■ Mathenia argues that allowing him to present the now-available mental examination evidence at his first habeas proceeding would have established the prejudice that resulted from his trial counsel's allegedly deficient performance. In concluding that Mathenia's trial counsel was not constitutionally ineffective, however, we found no instances of deficient performance in this regard. *Mathenia*, 975 F.2d at 448, 452. Had our opinion found the prejudice prong of *Strickland v. Washington*'s ineffective assistance of counsel test to be determinative, Mathenia's current argument might be more compelling. *Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674 (1984) (to establish constitutionally ineffective assistance of counsel, petitioner must show both deficient performance and

prejudice resulting from such deficiency). However, because of our finding that counsel's performance was not deficient, Mathenia's present argument does not affect our earlier decision.

Mathenia also asserts that he is innocent of the crime of capital murder because of his diminished mental capacity at the time of the murders. Such capacity allegedly prevented him from deliberating as to those murders. *See, e.g., State v. Eggers,* 675 S.W.2d 923, 925–26 (Mo.Ct.App.1984) (capital murder requires both premeditation (thinking about the act, for however short a period of time) and deliberation (cool reflection)). *See also State v. Gilmore,* 650 S.W.2d 627, 629 (Mo. 1983). We expressly rejected this argument as to premeditation in our earlier opinion. *See Mathenia,* 975 F.2d at 453. Furthermore, we agree with the district court's determination that there was ample evidence of deliberation, including the lapse of time between the murders, to allow for reflection before the second murder.

■ Turning to the matter now before the court, we review a district court's denial of Rule 59(e) relief under an abuse of discretion standard. *See, e.g., Twin City Const. Co. v. Turtle Mtn. Band of Chippewa Indians,* 911 F.2d 137, 139 (8th Cir.1990). An abuse of discretion will only be found if the district court's judgment was based on clearly erroneous factual findings or erroneous legal conclusions. *International Ass'n of Machinists and Aerospace Workers, Dist. Lodge No. 19 v. Soo Line R.R.,* 850 F.2d 368, 374 (8th Cir.1988), *cert. denied,* 489 U.S. 1010, 109 S.Ct. 1118, 103 L.Ed.2d 181 (1989). Under this standard, we find no abuse of discretion in the district court's denial of Rule 59(e) relief. Our determination of whether the district court abused its discretion is dependent upon an examination of the correctness of the earlier Rule 60 ruling. Therefore, our discussion begins with that ruling.

■ The district court correctly construed Mathenia's Rule 60 motion as a second petition for habeas corpus relief and declined to

review the merits of Mathenia's successive claims. *See Bolder v. Armontrout,* 983 F.2d 98, 99 (8th Cir.1992), *cert. denied,* 506 U.S. 1088, 113 S.Ct. 1070, 122 L.Ed.2d 497 (1993); *Blair v. Armontrout,* 976 F.2d 1130, 1134 (8th Cir.1992), *cert. denied,* 508 U.S. 916, 113 S.Ct. 2357, 124 L.Ed.2d 265 (1993). The claims were successive because they raised "grounds identical to grounds heard and decided on the merits in [his] previous petition." *Sawyer v. Whitley,* 505 U.S. at 338, 112 S.Ct. at 2518. The court could not, therefore, reach the merits of the claims unless Mathenia showed cause and prejudice. *Id.* at 339, 112 S.Ct. at 2518–19. Without a showing of cause and prejudice, the court could only hear the merits of his claims if its failure to do so would constitute a miscarriage of justice. *Id.; Joubert v. Hopkins,* 75 F.3d 1232, 1244 (8th Cir.), *cert. denied,* —— U.S. ——, 116 S.Ct. 2574, 135 L.Ed.2d 1090 (1996). Mathenia alleges he has satisfied both the cause and prejudice and the miscarriage of justice tests.[4] We address each argument in turn.

### A. Cause and Prejudice

In considering whether Mathenia has met the cause prong of the cause and prejudice test, we must determine whether some objective factor external to his defense prevented him from presenting or developing the factual or legal basis of his constitutional claim. *Ruff v. Armontrout,* 77 F.3d 265, 267 (8th Cir.), *cert. denied,* —— U.S. ——, 117 S.Ct. 226, 136 L.Ed.2d 158 (1996); *Joubert,* 75 F.3d at 1242. Mathenia wants to use the district court's denials of his requests for mental evaluations in conjunction with his first habeas corpus action as "cause" to excuse his successive claims, alleging these denials prevented him from fully developing his claims of ineffective assistance of counsel and diminished capacity. We disagree with this reasoning.

■ Some examples of factors external to the defense which prevent a petitioner

---

**4.** We recognize that Mathenia does not agree that his Rule 60 motion should have been treated as a second habeas petition. Anticipating our treatment as such, however, Mathenia alternatively argued that he has met both the cause and prejudice test and the miscarriage of justice exception to the procedural bar.

from developing the factual or legal basis of a claim are interference by the state, ineffective assistance of counsel, conflicts of interest, and legal novelty. *Joubert,* 75 F.3d at 1242. The district court's denial of requests for further mental evaluations does not excuse Mathenia's previous failure to fully develop his claims. The district court only denied the mental examinations after two mental health experts examined Mathenia and found that he was not suffering from any mental disease or defect. Furthermore, it was entirely possible for Mathenia to develop this mental examination evidence, in spite of the district court's denial of his requests, as is evidenced by his presentation of that information now. Consequently, we find that the district court's denial of mental evaluations is not cause for the failure to present such evidence in the first habeas corpus action.

Mathenia's argument in this regard is basically a rephrasing of his earlier ineffective assistance of counsel claim. He argues that his trial counsel was ineffective in failing to pursue the diminished capacity defense or present the mental examination evidence. We previously rejected this argument, finding no breach of duty by Mathenia's trial counsel. *Mathenia,* 975 F.2d at 447, 453. Accordingly, we find that the district court correctly refused to reconsider the merits of this claim.

■ Because we conclude that Mathenia has not shown cause, we need not address the prejudice prong of the equation. Nevertheless, we add that Mathenia has not shown prejudice on these facts. As the district court determined, even considering the new mental evaluation evidence, the *Schlup* standard of actual innocence was not met and Mathenia did not suffer actual prejudice. August Order at 5. Even taking into account the diminished capacity evidence, the evidence presented at trial overwhelmingly showed both premeditation and deliberation. Such evidence included the threats of revenge after the rape charges and the delay between the murders, which at least allowed time for deliberation before commission of the second murder. Mathenia had even asked his step-sister about the likely penalty for murder, shortly before the murders.

Therefore, Mathenia has not met the prejudice prong of the cause and prejudice test.

**B.   Miscarriage of Justice**

Mathenia also alleges he has shown his actual innocence to satisfy the miscarriage of justice exception. We disagree. We note that Mathenia does not claim that he did not commit these murders. Instead, he claims that because of his diminished capacity, he was incapable of deliberation. Because deliberation was an element of the crime of capital murder at the time of these murders, Mathenia argues that his diminished capacity renders him actually innocent of both the crime of capital murder and of the death penalty.

■ The standard for showing actual innocence, as recently modified by the United States Supreme Court's decision in *Schlup,* requires Mathenia to come forth with new evidence showing that a constitutional violation has probably resulted in the conviction of one who is actually innocent of the crime. *Schlup v. Delo,* —— U.S. at ——, 115 S.Ct. at 865. On these facts, Mathenia has made no such showing. As the district court observed,

> Assuming the full veracity of this evidence, the petitioner has not established that it is more likely than not that no reasonable juror would have convicted him in the light of the new evidence. *See Schlup,* —— U.S. at ——, 115 S.Ct. at 866. Taking into account the prosecution's evidence of petitioner's actions prior to and on the date of the murders, the Court finds that a jury could have reasonably inferred that petitioner acted deliberately and with premeditation even if it had considered the petitioner's institutional records, family history, and recent medical opinions of three mental health experts.

August Order at 5.

■ As earlier indicated, the evidence at trial showed that Mathenia had announced his plan to retaliate against the victims for having him arrested on the rape charges. Even if Mathenia had been incapable of deliberation before he killed Daisy, his first victim, the evidence revealed that he rode his

bicycle two blocks to Louanna's home to commit the second murder. Based on the evidence introduced at trial, a rational fact-finder would find that Mathenia "was capable of, and i[n] fact did, deliberate before he killed the victims." *Id.*

Mathenia further argues that the district court applied the wrong standard of actual innocence. We acknowledge that the district court quoted the *Sawyer v. Whitley* standard, instead of the *Schlup* standard, in its June order. At the time the district court entered its June order, however, *Schlup* had not yet been decided. Furthermore, the August order and not the June order has been appealed to this court. In the August order, the district court elaborated on its reasoning in the earlier order and relied heavily on the *Schlup* standard for actual innocence. Because the district court's August order applied the proper standard to find that Mathenia had not shown actual innocence, Mathenia's argument fails.

Because Mathenia has not shown either cause and prejudice for his successive claims, or that a miscarriage of justice will result from application of the procedural bar, we find that the district court correctly denied Mathenia's Rule 60 motion. Based upon that determination, we find that the district court was correct in denying Rule 59(e) relief. As previously stated, the district court's denial of Rule 59(e) relief is reviewed for an abuse of discretion. Because the district court correctly denied Mathenia's motion for Rule 60(b)(6) relief, we find no abuse of discretion in the court's refusal to alter or amend that judgment.

## III. CONCLUSION

Upon this finding of no abuse of discretion in the district court's denial of Mathenia's Rule 59(e) motion to alter or amend its previous judgment, we affirm the judgment of the district court.

BRIGHT, Circuit Judge, dissenting.

In *Mathenia I,* I dissented because Chuck Lee Mathenia was "well on the road to execution by reason of the carelessness and incompetence of his appointed public defender. . . ." *Mathenia v. Delo,* 975 F.2d 444, 454–55 (8th Cir.1992) (Bright, J., dissenting) (*Mathenia I*). Today, Mathenia is further down that road despite new evidence of his counsel's incompetence and that he lacked the "cool deliberation" necessary for imposition of the death penalty.

There are three issues in which I disagree with the majority. First, the district court failed to apply the correct standard of review for determining whether Mathenia makes out an "actual innocence" claim under *Schlup v. Delo,* —— U.S. ——, 115 S.Ct. 851, 130 L.Ed.2d 808 (1995). Second, new evidence demonstrates that Mathenia lacked the requisite "cool deliberation" under Missouri law to commit capital murder. This evidence creates a "gateway" by which Mathenia's ineffective assistance of counsel claim may be considered. Third, this new evidence strengthens my conviction, expressed in dissent in *Mathenia I,* that Mathenia's counsel was incompetent.

## ANALYSIS

### I.

Mathenia brings new evidence that his counsel was incompetent and that he is innocent of capital murder. The new evidence consists of uncontradicted affidavits by medical experts concluding that Mathenia lacked "cool deliberation" when committing the murders, a necessary element for the imposition of the death penalty under Missouri law. As an initial matter, the district court applied the wrong standard in considering Mathenia's "actual innocence" claim. In *Schlup v. Delo,* —— U.S. ——, 115 S.Ct. 851, 130 L.Ed.2d 808 (1995), the Supreme Court clarified the standard for claims that a habeas petitioner's "actual innocence" serves as a "gateway" for the court to address the merits of another constitutional claim. *Id.* at —— —— ——, 115 S.Ct. at 860–69. Here, Mathenia offers evidence of actual innocence not as an independent constitutional claim, but as a means for this court to set aside procedural bars and reconsider his ineffective assistance of counsel claim in light of this new evidence.

The Supreme Court considered two standards to govern this situation. One stan-

dard, previously enunciated in *Murray v. Carrier*, 477 U.S. 478, 106 S.Ct. 2639, 91 L.Ed.2d 397 (1986), required a petitioner to "show that it is more likely than not that no reasonable juror **would have found** petitioner guilty beyond a reasonable doubt." *Schlup*, —— U.S. at ——, 115 S.Ct. at 867 (emphasis added). The other standard, set forth in *Jackson v. Virginia*, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979), "looks to whether there is sufficient evidence which, if credited, **could support** the conviction." *Schlup*, —— U.S. at ——, 115 S.Ct. at 868 (emphasis added).

The Supreme Court noted two "important" distinctions between the *Jackson* and *Carrier* standards. *Schlup*, —— U.S. at ——, 115 S.Ct. at 868. The Court articulated the second distinction as follows:

> Second, **and more fundamentally**, the focus of the inquiry is different under *Jackson* than under *Carrier*. Under *Jackson*, the use of the word "could" focuses the inquiry on the power of the trier of the fact to reach its conclusion. Under *Carrier*, the use of the word "would" focuses the inquiry on the likely behavior of the trier of fact.

*Id.* (emphasis added). Accordingly, the Court adopted the less stringent *Carrier* standard.

The district court overlooked this subtle, yet significant difference. The district court cited *Schlup* in its August 1995 Order denying Mathenia's actual innocence claim, App. J9 (Dist.Ct.Order at 4–5), but improperly **applied** the *Jackson* standard:

> [T]he petitioner has not established that it is more likely than not that no reasonable juror **would have** convicted him in the light of the new evidence. *See Schlup*, —— U.S. at ——, 115 S.Ct. at 866. Taking into account the prosecution's evidence of petitioner's actions prior to and on the date of the murders, the Court finds that a jury **could have** reasonably inferred that petitioner acted deliberately and with premeditation even if it had considered the petitioner's institutional records, family

history, and recent medical opinions of three mental health experts.

*Id.* at 5 (emphasis added).

After quoting this language, the majority observes that "[b]ased on the evidence introduced at trial, a rational factfinder **would** find that Mathenia 'was capable of, and i[n] fact did, deliberate before he killed the victims.'" Op. at 1482 (quoting Dist.Ct.Order at 5) (emphasis added). The majority then states that "[b]ecause the district court's August order applied the proper standard to find that Mathenia had not shown actual innocence, Mathenia's argument fails." *Id.* at 1482.

I disagree. The district court's misapplication of *Schlup* is evident on the face of its order. The district court applied this standard in direct contravention of a carefully considered, fundamental distinction mandated by the Supreme Court and dictates that we remand this matter for further proceedings. *Schlup*, —— U.S. at ——, 115 S.Ct. at 869; *See also Jones v. Delo*, 56 F.3d 878, 883 (8th Cir.1995), *cert. denied*, —— U.S. ——, 116 S.Ct. 1330, 134 L.Ed.2d 481 (1996) (only "in certain instances" should the court proceed without consideration under the correct standard by the district court).

## II.

This court rejected Mathenia's original ineffective assistance of counsel claim in *Mathenia I*. This claim, however, is not procedurally barred as successive in this action because Mathenia successfully asserts a claim of "actual innocence" enabling this court to reconsider this claim.

The new medical evidence submitted by Mathenia is unrebutted by the state and reveals that Mathenia has a history of mental health problems.[5] The experts examining Mathenia included Dr. William A. O'Connor, a psychologist at the Kansas City Mental Health Foundation, Dr. Richard Wetzel, Professor of Medical Psychology at Washington University Medical School, and Dr. Jonathan Pincus, Professor and Chairman of the De-

---

**5.** After the district court rejected Mathenia's request for funding of a full medical and psychiatric examination, the Missouri Capital Repre-

sentation Center made the necessary financial assistance for this important information.

partment of Neurology at the George Washington Medical Center.

The uncontroverted medical evidence offers compelling evidence that Mathenia was incapable of "cool reflection" prior to the murders. For example, Dr. Pincus states that, at the time of the murders,

> Mathenia was incapable of "cool reflection." Because of his retardation and brain dysfunction, he could not have deliberated before acting. Had the information which was available at the time of his trial been properly evaluated by a competent mental health expert and had Mr. Mathenia been properly examined at that time, this conclusion would have been obvious from a medical, psychological and neurological standpoint.

App. J7 (Pincus Aff. at 10).

State law dictates that an individual commits capital murder if he "unlawfully, willfully, knowingly, deliberately and with premeditation" kills another person. Mo.Rev.Stat. § 565.001 (1978) (repealed by L. 1983, S.B. No. 276, p. 922, § 1). The element that distinguishes capital murder from second degree murder is "deliberation." *State v. Gilmore,* 650 S.W.2d 627, 629 (Mo.1983) (en banc). In other words, even if Mathenia committed murder with "knowledge" and "premeditation," Missouri law prohibits his execution if he was incapable of cool deliberation. *Id.* Rather, Mathenia would be guilty of a lesser form of homicide.

*Schlup* requires Mathenia to demonstrate that it is more likely than not that "no reasonable juror" would determine that he possessed the "cool deliberation" necessary for a capital offense. *Schlup,* —— U.S. at —— ——, 115 S.Ct. at 868–69. "The word 'reasonable' in that formulation is not without meaning. It must be presumed that a reasonable juror would consider fairly all of the evidence presented. It must also be presumed that such a juror would conscientiously obey the instructions of the trial court requiring proof beyond a reasonable doubt." *Id.* at ——, 115 S.Ct. at 868.

With the admission of Mathenia's new evidence, a jury would consider the following evidence: (1) *facts relating to the murder.*

Mathenia threatened to kill two women and killed them. After murdering Daisy Nash, Mathenia rode two blocks on his bike and murdered Louanna Bailey; and (2) *uncontroverted evidence that Mathenia lacked the requisite mental ability for "cool deliberation."* The new evidence specifically addresses the fact that Mathenia threatened the women before the murders, App. J2 (O'Connor Aff., June 16, 1993, at 9–10), that he rode his bike after the first murder and before committing the second murder, (*Id.* at 13; App. J2 (Wetzel Aff. at 25)), and that after the murders he attempted to hide incriminating evidence. App. J2 (O'Connor Aff. at 15). The evidence demonstrates that these actions are not inconsistent with a finding that Mathenia lacked "cool deliberation" when committing the murders. In fact, the new evidence concludes "to a reasonable degree of psychological certainty" that Mathenia did not possess the requisite "cool deliberation." App. J2 (Wetzel Aff. at 26).

It is not enough that there is **sufficient** evidence for a conviction of capital murder. In order to find **beyond a reasonable doubt** that Mathenia coolly deliberated when committing these murders, a jury would need to essentially ignore the medical evidence. This would result in an unreasonable verdict, however, because the new evidence is uncontroverted and places the facts in context. That context rejects any inference of "cool deliberation."

I believe a remand to the district court is appropriate. The district court should hold an evidentiary hearing regarding Mathenia's mental state at the time of the murders and utilize the appropriate *Schlup* analysis in reaching a decision as to whether Mathenia makes an "actual innocence" claim.

### III.

Mathenia's actual innocence claim creates a "gateway" by which we may consider his ineffective assistance of counsel claim. *Schlup,* —— U.S. at ——, 115 S.Ct. at 861. Indeed, the evidence surrounding his "actual innocence" claim is itself further evidence of the incompetence of his counsel during both the guilt and penalty phases of Mathenia's trial.

In *Mathenia I,* I noted three reasons why Mathenia's counsel was unconstitutionally deficient: (1) by not taking action to assure that his mentally retarded client would not speak to the sheriff and incriminate himself; (2) by not attempting to suppress the confession or, at a minimum, to suppress the video portion of the confession; and (3) by not presenting evidence of Mathenia's mental retardation at the guilt phase. *Mathenia,* 975 F.2d at 455–57.

I elaborated on the third point by observing that counsel's "conduct in the guilt phase of the trial, ... does little to suggest confidence in the outcome of the proceedings. [Trial counsel] called no witnesses at the guilt phase and rested without presenting a defense." *Id.* at 457. Specifically, counsel "acted unreasonably by not ... including the presentation of reasonable evidence of Mathenia's mental retardation...." *Id.* at 458.

At the time of *Mathenia I,* this court did not know the extent of Mathenia's mental disease. The evidence now before us, however, indicates that the dissent underestimated the incompetence of Mathenia's counsel at the guilt phase. Indeed, the discussion in the previous section indicates that the new evidence offers a compelling argument that Mathenia did not possess all the elements necessary for imposition of the death penalty.

This evidence also demonstrates the utter incompetence of counsel at the penalty phase of Mathenia's trial. Counsel presented no evidence of Mathenia's mental problems even though much of the new evidence now before us constitutes powerful mitigation which could and should have been presented to the jury. Furthermore, the following evidence was readily available to counsel at the time of the penalty phase, but was not utilized:

(1) School records that Mathenia tested into the mentally retarded range with an I.Q. of 59 when he was 14 years old. App. H1 (WISC Record Form, Nov. 1982).

(2) Farmington State Mental Hospital records indicating four commitments for evaluation and/or treatment. App. H1 (Farmington State Hosp. Admission Note and Final Summary, July 31, 1975).

(3) A social security physician's report prepared eighteen months prior to the murders indicating evidence of mental deficiency and possible petit mal seizures. The report recommended further evaluations at the state hospital. App. H1 (Medical Report Including Physician's Certification Form/Disability Evaluations, Oct. 14, 1982).

(4) A psychological report, prepared three months prior to the murders, indicating that Mathenia suffered from organic brain damage. App. H1 (Farmington State Hospital Psychological Evaluation, Jan. 11, 1984).

(5) A psychiatric report, prepared three months prior to the murders in relation to another matter, that Mathenia, "at the time of the alleged offense perhaps was incapable of understanding the nature, quality and wrongfulness of his act." App. H4 (Certificate at 5, Jan. 23, 1984).

Sadly, the incompetence of counsel prevented this evidence from reaching the jury during the penalty phase and resulted in Mathenia's death sentence.

## CONCLUSION

It appears unlikely Mathenia will find relief in the federal courts. The Governor of Missouri, however, stayed Mathenia's execution pending the results of a competency examination pursuant to state law. Mo.Rev. Stat. § 552.060 (1995). Not surprisingly, Mathenia was found incompetent to assist in the executive clemency proceedings. This dissenter trusts that Missouri will prevent the execution of a mentally incompetent man who faces execution because of the incompetence of his counsel.