NOTE:  This disposition is nonprecedential.

# United States Court of Appeals for the Federal Circuit

---

**EXMARK MANUFACTURING COMPANY INC.,**
*Plaintiff-Appellee*

**v.**

**BRIGGS & STRATTON CORP.,**
*Defendant-Appellant*

---

2019-1878

---

Appeal from the United States District Court for the District of Nebraska in No. 8:10-cv-00187-JFB-CRZ, Senior Judge Joseph F. Bataillon.

---

Decided:  October 6, 2020

---

J. DEREK VANDENBURGH, Carlson, Caspers, Vandenburgh & Lindquist PA, Minneapolis, MN, argued for plaintiff-appellee.  Also represented by ALEXANDER RINN, JOSEPH W. WINKELS.

MATTHEW WOLF, Arnold & Porter Kaye Scholer LLP, Washington, DC, argued for defendant-appellant.  Also represented by MARC A. COHN.

---

Before CHEN, LINN, and STOLL, *Circuit Judges.*

CHEN, *Circuit Judge.*

The parties and this litigation appear before us for the second time, having taken a long and winding road since Exmark filed its patent infringement suit against Briggs in 2010 alleging infringement of certain claims of U.S. Patent No. 5,987,863. The procedural history leading up to the first appeal was thoroughly explained in our prior opinion, *Exmark Mfg. Co. v. Briggs & Stratton Power Prods. Grp., LLC*, 879 F.3d 1332 (Fed. Cir. 2018), and only claim 1 remains at issue. Relevant to this second appeal, following grant of summary judgment of infringement and no invalidity, the case proceeded to a jury trial, where the jury found that Briggs willfully infringed claim 1 of the '863 patent. *Id.* at 1337. Our prior opinion vacated the district court's summary judgment of no invalidity and the ultimate damages award, remanding for reconsideration of invalidity and, if necessary, a retrial on willfulness and damages. *Id.* at 1353–54.

On remand, the district court again ruled that claim 1 was not invalid as a matter of law. Following another jury verdict on damages, the district court awarded enhanced damages for willfulness. The district court also awarded prejudgment interest at an interest rate which was later adjusted in response to a motion filed by Exmark under Rule 59(e) of the Federal Rules of Civil Procedure. In this second appeal, Briggs challenges the district court's rulings that claim 1 is infringed and not invalid, as well as the adjustment of prejudgment interest. We *affirm*.

BACKGROUND

The '863 patent's invention relates to lawn mowers, and specifically to the use of baffles to control and guide the flow of air and grass clippings through the mower. As the patent explains, there are various types of commercial lawn mowers that differ depending on "the manner in

which the cut grass cuttings or clippings are handled or directed." '863 patent at col. 1 ll. 29–36. In a "side discharge" mower, "the grass clippings are discharged out of one side of the deck and onto the ground." *Id.* at col. 1 ll. 36–38. In a "mulching" mower, the grass clippings are not discharged from the side, but instead "are re-cut into finer particles and are then discharged directly down to the ground." *Id.* at col. 1 ll. 38–41.

Mowers were often converted from side discharge to mulching configurations through installing "mulching baffles" to maintain "an enclosed area around the [mower] blade" so that clippings are ultimately "directed down to the ground" instead of being discharged through a discharge opening in the mower deck's sidewall. *Id.* at col. 1 ll. 41–49. But the installation of such mulching baffles was "labor-intensive and time-consuming," a problem which the '863 patent addresses by providing a side discharge mower with "flow control baffles" that would combine with "removable mulching baffles which cooperate with [the] flow control baffles to define individual mulching chambers surrounding each of the rotary cutting blades." *Id.*

The benefits of the invention's convertible mower are two-fold. First, in the side discharge state, the flow control baffles' claimed design "efficiently direct the grass clippings and air to the side discharge opening" of the mower. *Id.* at col. 2 l. 66–col. 3, l. 4. Second, these same flow control baffles are reused in a mulching state—by "securing" the removable mulching baffles to the flow control baffles they "cooperate" "to define a substantially cylindrical mulching chamber around each of the cutting blades." *Id.* at col. 3 ll. 4–11. Reusing the flow control baffles as part of the mulching chamber in the mulching state simplified the process of converting between side discharge and mulching states; instead of installing an entire mulching chamber, only the relatively small and easily installed removable mulching baffles need be secured to the existing flow control baffles. *Id.* at col. 5 ll. 51–56 ("The mulching baffles . . . are quickly

and easily installed on the mower deck to convert the side discharge mower deck into a mulching deck with a minimum amount of material being required."); *see also id.* at col. 1 ll. 41–49.

Claim 1 is directed to the side discharge mower and recites:

1. A multiblade lawn mower, comprising:

a mower deck comprising a top wall, a front wall, a back wall, and first and second side walls defining a downwardly directed opening;

each of said front wall, said back wall, and said opposite side walls having interior and exterior surfaces;

said first side wall having a *discharge opening* formed therein;

said discharge opening having rearward and forward ends;

means operatively connected to said mower deck for moving said mower deck along the ground;

first and second cutting blades having blade tips rotatably disposed within said mower deck;

power means operatively connected to said cutting blades for causing the rotation of each of said cutting blades whereby the blade tip path of each of said cutting blades defines a circle;

a first flow control baffle positioned in said mower deck which extends downwardly from the interior surface of said top wall between said cutting blades and said front wall;

said first flow control baffle extending substantially continuously from a first location adjacent the interior surface of said second side wall to a

second location adjacent the interior surface of said first side wall and adjacent the forward end of said discharge opening;

said first flow control baffle comprising a first arcuate baffle portion, having first and second ends, which extends from the interior surface of said second side wall partially around said first cutting blade, a first elongated and substantially straight baffle portion, having first and second ends, extending from said second end of said first arcuate baffle portion, a second arcuate baffle portion, having first and second ends, which extends from said second end of said first elongated and substantially straight baffle portion partially around said second cutting blade;

a second flow control baffle positioned in said mower deck which extends downwardly from the interior surface of said top wall rearwardly of said cutting blades; and

said second flow control baffle including a plurality of semi-circular baffle portions, each of said baffle portions being positioned adjacent the blade tip path of one of said cutting blades;

said first and second flow control baffles defining a plurality of open throat portions which are positioned between adjacent cutting blades.

'863 patent at claim 1 (emphases added).

Claim 4, although not at issue, is relevant to the parties' dispute over the construction of "discharge opening" in claim 1. In particular, claim 4, which depends from claim 1 through claim 2, is directed to the conversion of the side discharge mower to a mulching mower:

4. The lawn mower of claim 2 further comprising a plurality of selectively removable mulcher baffles

which close said throat portions and said discharge opening to define a substantially cylindrical mulching chamber around each of said cutting blades.

*Id.* at claim 4 (emphases added).

On remand after the first appeal to our court in 2018, the district court was to "reach its own independent conclusion," separate from the Board's rulings during various reexaminations, "on whether a genuine issue of fact exists regarding invalidity" of claim 1. *Exmark*, 879 F.3d at 1344. In reconsidering the invalidity issue as to claim 1, the district court was also to "resolve any remaining claim construction disputes." *Id.* After receiving additional briefing from the parties, the district court reaffirmed its prior grant of summary judgment of no invalidity of claim 1.

Construing the claims, the district court determined that "the claim language . . . requires some 'spatial separation'" between the first flow control baffle and the front wall, and the claimed "discharge opening" was not met by a prior art "opening" that was obstructed. J.A. 43–44. The district court denied Briggs's motion for summary judgment on indefiniteness of claim 1, which argued that the court's construction had imposed an indefinite requirement that the baffle's control of grass clippings must have "meaningful effect." J.A. 84–85. Based on its claim constructions, the district court reaffirmed its decision on summary judgment that claim 1 was not invalid, rejecting Briggs's arguments that claim 1 was anticipated by and obvious over a brochure disclosing a lawn mower mulching kit from Simplicity Manufacturing Co. (Simplicity). J.A. 45.

After the district court reaffirmed its ruling of no invalidity of claim 1, and on the basis of the undisturbed infringement ruling from 2015, the case proceeded to a retrial on damages. Following a jury verdict on damages, the district court then entered judgment awarding enhanced damages for willful infringement and prejudgment interest at

the U.S. Treasury rate instead of the prime rate. J.A. 175–80. Exmark moved under Rule 59(e) to amend the judgment by altering the prejudgment interest rate. The court granted Exmark's motion, maintaining the lower U.S. Treasury rate for the six-year period before the lawsuit was filed and applying the higher prime interest rate to the nine-year period post-suit filing. J.A. 189–91.

Briggs appeals the district court's orders (1) granting summary judgment of no invalidity; (2) denying summary judgment of indefiniteness; (3) granting summary judgment of infringement; and (4) adjusting prejudgment interest under Rule 59(e). We have jurisdiction under 28 U.S.C. § 1295(a)(1).

## DISCUSSION

We review the district court's grant of summary judgment according to the law of the regional circuit. *Phil–Insul Corp. v. Airlite Plastics Co.*, 854 F.3d 1344, 1353 (Fed. Cir. 2017). The Eighth Circuit reviews a district court's grant of summary judgment de novo. *Id.* (citing *Wilson v. Spain*, 209 F.3d 713, 716 (8th Cir. 2000)). "Summary judgment is appropriate if 'the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.'" *Id.* (quoting Fed. R. Civ. P. 56(a)).

## I. CLAIM CONSTRUCTION

"[T]he ultimate issue of the proper construction of a claim should be treated as a question of law." *Teva Pharm. USA, Inc. v. Sandoz, Inc.*, 574 U.S. 318, 328–29 (2015). We review any "subsidiary factual findings [on extrinsic evidence] under the 'clearly erroneous' standard." *Id.* "[W]hen the district court reviews only evidence intrinsic to the patent (the patent claims and specifications, along with the patent's prosecution history), the judge's determination will amount solely to a

determination of law, and the Court of Appeals will review that construction *de novo*." *Id.* at 331.

The parties' dispute as to whether claim 1 is invalid over the Simplicity prior art centers on the construction of two claim terms: "discharge opening" and "flow control baffle." We address each in turn.

### a. "Discharge opening"

Briggs argues that the discharge opening of claim 1 encompasses a lawn mower having a mower deck opening that does not function to discharge grass clippings. Briggs's argument relies on the relationship between claim 1 and dependent claim 4, which recites "selectively removable mulcher baffles which close" the "discharge opening." In Briggs's view, because the removable mulcher baffles of claim 4 close off the discharge opening, the discharge opening of claim 1 need not discharge any grass. We disagree.

While we begin our analysis with the language of the claim itself, *see Phillips v. AWH Corp.*, 415 F.3d 1303, 1312 (Fed. Cir. 2005), the claims "do not stand alone. Rather, they are part of 'a fully integrated written instrument,' . . . consisting principally of a specification that concludes with the claims." *Id.* at 1315 (quoting *Markman v. Westview Instruments, Inc.*, 52 F.3d 967, 978 (Fed. Cir. 1995)). "For that reason, claims 'must be read in view of the specification, of which they are a part.'" *Id.* (quoting *Markman*, 52 F.3d at 979).

Claim 1 recites a "discharge opening" in a "first side wall." '863 patent at claim 1. To read claim 1 as encompassing a lawn mower with a side discharge opening that is covered and thus cannot discharge grass would render the word "discharge" meaningless. *Bicon, Inc. v. Straumann Co.*, 441 F.3d 945, 950 (Fed. Cir. 2006) (explaining that to read limitations out of a claim would "be contrary to the principle that claim language should not be treated as meaningless").

Consistent with the specification, the side discharge mower of claim 1 is open to conversion into other states by the addition of other components. Briggs acknowledges that claim 1 "recites a 'multiblade lawn mower' that converts between side discharging and mulching.'" Appellant's Reply Br. at 1. As recited in claim 4, one such conversion is through the addition of a "removable" structure, i.e., "selectively removable mulcher baffles," whereby the mower is converted from a side discharge state into a mulching state. *Id.* at claim 4; *see also id.* at col. 3 ll. 4–11. But the addition of the removable mulcher baffles in claim 4 does not change the scope of claim 1, which continues to be directed to a mower with a side discharge state having particular claimed features, including a "first side wall having a discharge opening" and a "first control baffle extending substantially continuously from a first location adjacent the interior surface of said second side wall to a second location adjacent the interior surface of said first side wall and adjacent the forward end of said discharge opening." *Id.* at claim 1.

As indicated by the "selectively removable" aspect of the recited mulcher baffles, claim 4's added claim elements provide claim 1's mower with an additional mulching state in which the removable mulcher baffles combine with the flow control baffles. While it is true that, in the mulching state with the mulcher baffles installed, the discharge opening cannot discharge grass, claim 4 also preserves the side discharge state of claim 1 with a functioning "discharge opening" and "control baffle" when the mulcher baffles are "selectively remov[ed]." *Id.* at claims 1, 4. Thus, we agree with the district court that, to meet all of the limitations of claim 1, the discharge opening "must be one through which grass will actually discharge when grass is cut." J.A. 44.

10                EXMARK MFG. CO. v. BRIGGS & STRATTON CORP.

b. "Flow control baffle"

Briggs argues that the district court erred in importing a requirement of spatial separation between the claimed "first flow control baffle" and the front wall. We agree. Although the district court "adopted the parties' agreed-to construction of 'first flow control baffle' as 'a front structure within the walls of the mower deck that controls the flow of air and grass clippings,'" J.A. 33, the court further observed that "[i]n context, to a person of ordinary skill in the art, a baffle is separate from and spaced away from the front wall in order to constitute a 'flow control baffle.'" J.A. 42. The court explained that Simplicity's mounting plates, which "run along, contact and conform to the front wall are not 'flow control baffles' due to a lack of spatial separation between the mounting plates and the front wall." J.A. 41. Reasoning that "[t]he claims of the '863 patent expressly require two distinct structures: a 'front wall' and a front 'flow control baffle,'" and that the front flow control baffle must be "between" the blades and the front wall, the court concluded that this distinction "requires some 'spatial separation.'" J.A. 43.

Although claim 1 recites both a "front wall" and a "first flow control baffle," the separate recitation of these structures does not preclude physical contact between them. Likewise, a mower having a "first flow control baffle" that contacts the "front wall" can still meet the claimed requirement that the baffle is positioned between the front wall and the cutting blades. '863 patent at claim 1 (requiring that the "first flow control baffle" "extends downwardly from the interior surface of said top wall between said cutting blades and said front wall"). Exmark itself argued during reexamination that the claim does not preclude contact between the flow control baffle and the front wall. J.A. 28500–01 ("We don't disagree that [the flow control baffle] can contact – you can bolt the thing to the front wall and it would still be a baffle.").

The specification, which is entirely silent as to any spatial requirement between front wall and flow control baffle, does not support the district court's construction. To the extent that the specification addresses any spacing between flow control baffles and walls of the mower, it is to suggest that the two can be merged and form part of the same structure. *Id.* at col. 4, ll. 34–36 (explaining that "back wall 36 may be eliminated with the flow control baffle 68 forming the back wall of the mower deck"). Although the figures in the specification depict some distance between the front wall and corresponding flow control baffle, *id.* at Figs. 3–4, these exemplary illustrations are not sufficient to impose a spatial separation requirement on claim language that is otherwise silent as to any required baffle-wall spacing. "We have repeatedly held that it is not enough that the only embodiments, or all of the embodiments, contain a particular limitation to limit claims beyond their plain meaning." *Unwired Planet, LLC v. Apple Inc.*, 829 F.3d 1353, 1359 (Fed. Cir. 2016) (citations and quotations omitted).

For the above reasons, we vacate the district court's construction to the extent that it required spatial separation between the "first flow control baffle" and the "front wall."[1] We thus reinstate the parties' agreed-upon construction for the "first flow control baffle": "a front structure within the walls of the mower deck that controls the flow of air and grass clippings." J.A 33. Our rejection of this particular construction, however, does not require a reversal or remand of the district court's validity or infringement rulings, which we turn to next.

---

[1] Because we hold that the district court erred in importing a requirement of spatial separation into claim 1, we do not reach Briggs's argument that such a spatial separation requirement would be indefinite under 35 U.S.C. § 112.

## II. INVALIDITY

### a. Anticipation

Under 35 U.S.C. § 102(b), a prior art reference will anticipate if it "disclose[s] each and every element of the claimed invention . . . arranged or combined in the same way as in the claim." *In re Gleave*, 560 F.3d 1331, 1334 (Fed. Cir. 2009) (citations and internal quotation marks omitted). "While anticipation is a question of fact, it may be decided on summary judgment if the record reveals no genuine dispute of material fact." *Encyclopaedia Britannica, Inc. v. Alpine Elecs. of Am., Inc.*, 609 F.3d 1345, 1349 (Fed. Cir. 2010).

Because the district court correctly construed claim 1, reciting a "discharge opening," to require a mower with a side discharge state, i.e., that grass is discharged through the opening, the district court likewise did not err in concluding that claim 1 is not anticipated by Simplicity's mulching mower.

Simplicity discloses a mulching kit that can be added to a side discharge mower. J.A. 23915. The parties do not dispute that, without the mulching kit installed, the Simplicity side discharge mower does not include the claimed "flow control baffle." Rather, Briggs contends that, with the mulching kit installed, the Simplicity mower contains both the "flow control baffle" and the "discharge opening." But Briggs's arguments on appeal rely on its proposed construction of the "discharge opening" as encompassing an opening that does not discharge any grass. The parties do not appear to dispute that the Simplicity mulching kit, when installed, covers the side opening in a way that prevents discharge of grass, i.e., the opening is not a "discharge" opening as construed by the district court. That leaves Briggs with relying on a prior art mulching mower to anticipate a mower in a claimed side discharge state. Because we affirm the district court's construction of "discharge opening," we likewise affirm the district court's

ruling that Simplicity does not disclose any mower config-uration meeting all of the limitations of claim 1: a "dis-charge opening" *and* a "flow control baffle."

### b. Obviousness

In the alternative, Briggs argues that that it would have been obvious under 35 U.S.C. § 103(a) to only par-tially install Simplicity's mulching kit, i.e., employing its mulching plates but discarding the plate covering the open-ing in the side wall. Briggs complains that the district court failed to address this partial installation argument. In support of this argument, Briggs points to testimony by its expert, Mr. Del Ponte, that customers might leave mulching baffles in place when converting a mower from mulching to side discharge modes. We agree with Exmark that Mr. Del Ponte's speculative testimony fails to create a genuine question of material fact.

As an initial matter, Briggs's briefing on appeal does not attempt to explain why it would have been obvious to partially install Simplicity's *mulching* kit for the purpose of *side discharge.* Instead, Briggs offers the conclusory as-sertion that it "argued, based on Mr. Del Ponte's testimony, that it would have been obvious to a person of ordinary skill to mow with the cover removed from the discharge open-ing" and alleged as a general matter that "[s]everal pieces of prior art show baffles like the one in Simplicity in a side discharge configuration." Appellant's Opening Br. at 61–62. Before the district court, Briggs offered equally conclu-sory arguments on its partial installation theory, asserting only that "Mr. Del Ponte testified that it would have been obvious to a person of ordinary skill to try to mow with the cover removed from the discharge opening" and "[s]everal pieces of prior art show baffles like the one in Simplicity in a side discharge configuration, providing further motiva-tion to do so with Simplicity." J.A. 27812–13. On appeal and before the district court, Briggs has focused its efforts on advancing its construction of "discharge opening" for

anticipation, leaving its obviousness theories undeveloped and thus inadequate to prevent summary judgment of non-obviousness. *Ecolochem, Inc. v. S. Cal. Edison Co.*, 227 F.3d 1361, 1372 (Fed. Cir. 2000) ("Broad conclusory statements regarding the teaching of multiple references, standing alone, are not 'evidence.'").

Even considering Mr. Del Ponte's testimony, we do not see any concrete theory for why it would have been obvious to create a new side discharge mower by combining portions of Simplicity's mulching and side discharge configurations. Based on second-hand information heard from "[p]eople who are in contact with mulching kits," Mr. Del Ponte asserted that customers "may choose, and in most cases will choose, to keep mulch baffles . . . installed in the mower deck rather than go through the process of removing them and reinstalling them as they move from customer to customer to customer." J.A. 25609 at p. 218 l. 10–p. 220 l. 21. Lacking personal knowledge of how Simplicity's mower might be configured by customers, Mr. Del Ponte instead suggested that it was "conceivable" that, for some unspecified "grass conditions," keeping mulch baffles in place might not have a significant detrimental impact on the ability of the mower to cut grass in side discharge mode. *Id.* at p. 219 ll. 5–12 (testifying that "it's very conceivable that closing off the raised front skirt with a baffle could have a negligible effect on – on some grass conditions"). Mr. Del Ponte's testimony was untethered to Simplicity's mower and thus too skeletal and speculative to create a material factual dispute as to why it would have been obvious to combine parts of Simplicity's side discharge and mulching configurations. "[C]onclusory expert assertions do not give rise to a genuine issue of material fact." *Streck, Inc. v. Rsch. & Diagnostic Sys., Inc.*, 665 F.3d 1269, 1290 (Fed. Cir. 2012). Likewise, the existence of other prior art with baffles does not, without more, create a material factual dispute over whether it would have obvious to combine Simplicity's mulching and side discharge configurations.

In the absence of any material factual dispute, district court did not err in granting summary judgment of nonobviousness.

## III. INFRINGEMENT

In its summary judgment order in 2015, the district court concluded that "[t]he evidence shows that every limitation recited in the claims is found in the accused devices," and no reasonable jury could have found otherwise. J.A. 23966–67. We agree. Like the district court, we see no difference in the claimed "flow control baffle" and the structure of the accused Briggs mower. This outcome is immediately apparent from a comparison of the accused mower to the limitations of claim 1, and is illustrated by a comparison of Figure 4 of the '863 patent to Briggs's accused mower provided by Exmark:

 

**Exmark's '863 Patent**          **Briggs' Infringing Mower**

Appellee's Br. at 63; *see also* '863 patent at Fig. 4; J.A. 21520. Although we vacate the district court's construction of "flow control baffle" to the extent it required spatial separation between the baffle and the front wall, summary judgment of infringement is appropriate regardless of whether "flow control baffle" is construed to require spatial separation.

## IV. PREJUDGMENT INTEREST

In the Eighth Circuit, the grant or denial of a motion under Rule 59(e) is reviewed for an abuse of discretion. *Mathenia v. Delo*, 99 F.3d 1476, 1480 (8th Cir. 1996).

In 2016, following the first jury trial, Exmark moved for prejudgment interest in the amount of $8,545,058,

representing interest at the "prime" rate applied to damages accrued prior to the date of judgment. The district court instead awarded prejudgment interest of $1,540,614 at the lower U.S. Treasury rate to penalize Exmark for its delay in filing suit, which "contributed, to some extent, to a longer period of prejudgment interest."[2] J.A. 21227–28. After the second jury trial, the district court again awarded prejudgment interest at the reduced U.S. Treasury rate, and Exmark moved under Rule 59(e) to adjust the prejudgment interest. The district court was persuaded by Exmark's argument that, because the "the case ha[d] now been pending for almost nine years," the "historically low, near-zero" U.S. Treasury rate during this time overpenalized Exmark and was thus "not sufficient to adequately compensate Exmark." J.A. 189–91. Adopting Exmark's proposed bifurcation of the prejudgment interest award into pre-suit and post-suit time periods, the district court assigned the reduced U.S. Treasury rate to the pre-suit time period while awarding the prime rate to the post-suit time period. *Id.*

In bifurcating the prejudgment interest award, the district court also stated:

> Circumstances have changed since the first trial of this action. In particular, the Court has awarded $9.9 million less in enhanced damages.

J.A. 190. Briggs argues that the district court erred in relying on a reduction in enhanced damages as a justification for increasing the prejudgment interest rate. In particular, Briggs argues that enhanced damages are a punitive

---

[2]    The district court stated that its award following the first jury trial also "reflect[ed] the facts that Briggs prevailed on some claims (the redesigned models), and that Exmark was awarded enhanced damages." *Id.*

remedy and thus not relevant to the choice of interest rate for the compensatory remedy of prejudgment interest.

We decline to overturn the district court's discretionary determination of prejudgment interest. The district court reasonably adjusted the prejudgment interest award to reflect that the litigation had continued for longer than the district court had anticipated when it initially awarded the lower interest rate in 2016. Because the lower interest rate initially awarded was intended to penalize Exmark for its delay in filing suit, it became less representative as more time passed after the suit was filed. Under the circumstances in this long, drawn-out litigation, we cannot conclude that it was an abuse of discretion for the district court to correct the initially assigned interest rate by bifurcating the prejudgment interest award between pre-suit and post-suit time periods.[3] Assigning a reduced prejudgment interest rate to only the pre-suit time period more accurately represented Exmark's contribution to a longer period of prejudgment interest.

If, as Briggs urges, it was error to consider the jury's award of enhanced damages, then that speaks to the district court's first prejudgment interest determination, which likewise accounted for the enhanced damages award. But Briggs did not challenge that first prejudgment interest determination for improperly considering

---

[3]    The parties also dispute whether, in the Eighth Circuit, Rule 59(e) motions are held to the same standard as Rule 60(b) motions and thus granted only in "exceptional circumstances." Appellant's Opening Br. at 69 (citing *Jones v. Swanson*, 512 F.3d 1045, 1048 (8th Cir. 2008)). But even when considering whether "exceptional circumstances" have occurred, "[t]he district court has wide discretion in ruling on a Rule 60(b) motion, and we will only reverse for a clear abuse of discretion." *Jones*, 512 F.3d at 1048.

18              EXMARK MFG. CO. v. BRIGGS & STRATTON CORP.

enhanced damages when the award of that reduced interest rate favored Briggs, and it was not an abuse of discretion for the district court to adjust that interest rate to correct for an over-penalization of Exmark's delay in filing suit.

### CONCLUSION

We have considered Briggs's remaining arguments and find them unpersuasive. For the reasons stated above, we *affirm* the district court's judgments as to infringement and no invalidity, as well as the court's adjustment to the prejudgment interest award under Rule 59(e).

**AFFIRMED**