(Slip Opinion) OCTOBER TERM, 2016 1

NOTE: Where it is feasible, a syllabus (headnote) will be released, as is being done in connection with this case, at the time the opinion is issued. The syllabus constitutes no part of the opinion of the Court but has been prepared by the Reporter of Decisions for the convenience of the reader. See *United States* v. *Detroit Timber & Lumber Co.,* 200 U. S. 321, 337.

# SUPREME COURT OF THE UNITED STATES

Syllabus

## SAMSUNG ELECTRONICS CO., LTD., ET AL. *v.* APPLE INC.

### CERTIORARI TO THE UNITED STATES COURT OF APPEALS FOR THE FEDERAL CIRCUIT

No. 15–777. Argued October 11, 2016—Decided December 6, 2016

Section 289 of the Patent Act makes it unlawful to manufacture or sell an "article of manufacture" to which a patented design or a colorable imitation thereof has been applied and makes an infringer liable to the patent holder "to the extent of his total profit." 35 U. S. C. §289. As relevant here, a jury found that various smartphones manufactured by petitioners (collectively, Samsung) infringed design patents owned by respondent Apple Inc. that covered a rectangular front face with rounded edges and a grid of colorful icons on a black screen. Apple was awarded $399 million in damages—Samsung's entire profit from the sale of its infringing smartphones. The Federal Circuit affirmed the damages award, rejecting Samsung's argument that damages should be limited because the relevant articles of manufacture were the front face or screen rather than the entire smartphone. The court reasoned that such a limit was not required because the components of Samsung's smartphones were not sold separately to ordinary consumers and thus were not distinct articles of manufacture.

*Held*: In the case of a multicomponent product, the relevant "article of manufacture" for arriving at a §289 damages award need not be the end product sold to the consumer but may be only a component of that product. Pp. 4–9.

(a) The statutory text resolves the issue here. An "article of manufacture," which is simply a thing made by hand or machine, encompasses both a product sold to a consumer and a component of that product. This reading is consistent with §171(a) of the Patent Act, which makes certain "design[s] for an article of manufacture" eligible for design patent protection, and which has been understood by the Patent Office and the courts to permit a design patent that extends to

only a component of a multicomponent product, see, *e.g.*, *Ex parte Adams*, 84 Off. Gaz. Pat. Office 311; *Application of Zahn*, 617 F. 2d 261, 268 (CCPA).  This reading is also consistent with the Court's reading of the term "manufacture" in §101, which makes "any new and useful . . . manufacture" eligible for utility patent protection.  See *Diamond* v. *Chakrabarty*, 447 U. S. 303, 308.  Pp. 4–7.

(b) Because the term "article of manufacture" is broad enough to embrace both a product sold to a consumer and a component of that product, whether sold separately or not, the Federal Circuit's narrower reading cannot be squared with §289's text.  Absent adequate briefing by the parties, this Court declines to resolve whether the relevant article of manufacture for each design patent at issue here is the smartphone or a particular smartphone component.  Doing so is not necessary to resolve the question presented, and the Federal Circuit may address any remaining issues on remand.  Pp. 7–8.

786 F. 3d 983, reversed and remanded.

SOTOMAYOR, J., delivered the opinion for a unanimous Court.

NOTICE: This opinion is subject to formal revision before publication in the preliminary print of the United States Reports. Readers are requested to notify the Reporter of Decisions, Supreme Court of the United States, Washington, D. C. 20543, of any typographical or other formal errors, in order that corrections may be made before the preliminary print goes to press.

# SUPREME COURT OF THE UNITED STATES

No. 15–777

SAMSUNG ELECTRONICS CO., LTD., ET AL., PETITIONERS *v.* APPLE INC.

ON WRIT OF CERTIORARI TO THE UNITED STATES COURT OF APPEALS FOR THE FEDERAL CIRCUIT

[December 6, 2016]

JUSTICE SOTOMAYOR delivered the opinion of the Court.

Section 289 of the Patent Act provides a damages remedy specific to design patent infringement. A person who manufactures or sells "any article of manufacture to which [a patented] design or colorable imitation has been applied shall be liable to the owner to the extent of his total profit." 35 U. S. C. §289. In the case of a design for a single-component product, such as a dinner plate, the product is the "article of manufacture" to which the design has been applied. In the case of a design for a multicomponent product, such as a kitchen oven, identifying the "article of manufacture" to which the design has been applied is a more difficult task.

This case involves the infringement of designs for smartphones. The United States Court of Appeals for the Federal Circuit identified the entire smartphone as the only permissible "article of manufacture" for the purpose of calculating §289 damages because consumers could not separately purchase components of the smartphones. The question before us is whether that reading is consistent with §289. We hold that it is not.

# I
## A

The federal patent laws have long permitted those who invent designs for manufactured articles to patent their designs. See Patent Act of 1842, §3, 5 Stat. 543–544. Patent protection is available for a "new, original and ornamental design for an article of manufacture." 35 U. S. C. §171(a). A patentable design "gives a peculiar or distinctive appearance to the manufacture, or article to which it may be applied, or to which it gives form." *Gorham Co.* v. *White*, 14 Wall. 511, 525 (1872). This Court has explained that a design patent is infringed "if, in the eye of an ordinary observer, giving such attention as a purchaser usually gives, two designs are substantially the same." *Id.,* at 528.

In 1885, this Court limited the damages available for design patent infringement. The statute in effect at the time allowed a holder of a design patent to recover "the actual damages sustained" from infringement. Rev. Stat. §4919. In *Dobson* v. *Hartford Carpet Co.*, 114 U. S. 439 (1885), the lower courts had awarded the holders of design patents on carpets damages in the amount of "the entire profit to the [patent holders], per yard, in the manufacture and sale of carpets of the patented designs, and not merely the value which the designs contributed to the carpets." *Id.,* at 443. This Court reversed the damages award and construed the statute to require proof that the profits were "due to" the design rather than other aspects of the carpets. *Id.,* at 444; see also *Dobson* v. *Dornan*, 118 U. S. 10, 17 (1886) ("The plaintiff must show what profits or damages are attributable to the use of the infringing design").

In 1887, in response to the *Dobson* cases, Congress enacted a specific damages remedy for design patent infringement. See S. Rep. No. 206, 49th Cong., 1st Sess., 1–2 (1886); H. R. Rep. No. 1966, 49th Cong., 1st Sess., 1–2 (1886). The new provision made it unlawful to manufac-

ture or sell an article of manufacture to which a patented design or a colorable imitation thereof had been applied. An act to amend the law relating to patents, trademarks, and copyright, §1, 24 Stat. 387. It went on to make a design patent infringer "liable in the amount of" $250 or "the total profit made by him from the manufacture or sale . . . of the article or articles to which the design, or colorable imitation thereof, has been applied." *Ibid.*

The Patent Act of 1952 codified this provision in §289. 66 Stat. 813. That codified language now reads, in relevant part:

> "Whoever during the term of a patent for a design, without license of the owner, (1) applies the patented design, or any colorable imitation thereof, to any article of manufacture for the purpose of sale, or (2) sells or exposes for sale any article of manufacture to which such design or colorable imitation has been applied shall be liable to the owner to the extent of his total profit, but not less than $250 . . . ." 35 U. S. C. §289.

## B

Apple Inc. released its first-generation iPhone in 2007. The iPhone is a smartphone, a "cell phone with a broad range of other functions based on advanced computing capability, large storage capacity, and Internet connectivity." *Riley* v. *California*, 573 U. S. \_\_\_, \_\_\_ (2014) (slip op., at 2). Apple secured many design patents in connection with the release. Among those patents were the D618,677 patent, covering a black rectangular front face with rounded corners, the D593,087 patent, covering a rectangular front face with rounded corners and a raised rim, and the D604,305 patent, covering a grid of 16 colorful icons on a black screen. App. 530–578.

Samsung Electronics Co., Samsung Electronics America, Inc., and Samsung Telecommunications America, LLC (Samsung), also manufacture smartphones. After Apple

released its iPhone, Samsung released a series of smartphones that resembled the iPhone. *Id.,* at 357–358.

Apple sued Samsung in 2011, alleging, as relevant here, that various Samsung smartphones infringed Apple's D593,087, D618,677, and D604,305 design patents. A jury found that several Samsung smartphones did infringe those patents. See *id.,* at 273–276. All told, Apple was awarded $399 million in damages for Samsung's design patent infringement, the entire profit Samsung made from its sales of the infringing smartphones. See *id.*, at 277–280, 348–350.

The Federal Circuit affirmed the design patent infringement damages award.[1] In doing so, it rejected Samsung's argument "that the profits awarded should have been limited to the infringing 'article of manufacture'"— for example, the screen or case of the smartphone—"not the entire infringing product"—the smartphone. 786 F. 3d 983, 1002 (2015). It reasoned that "limit[ing] the damages" award was not required because the "innards of Samsung's smartphones were not sold separately from their shells as distinct articles of manufacture to ordinary purchasers." *Ibid.*

We granted certiorari, 577 U. S. ___ (2016), and now reverse and remand.

## II

Section 289 allows a patent holder to recover the total profit an infringer makes from the infringement. It does so by first prohibiting the unlicensed "appli[cation]" of a

---

[1] Samsung raised a host of challenges on appeal related to other claims in the litigation between Apple and Samsung. The Federal Circuit affirmed in part—with respect to the design patent infringement finding, the validity of two utility patent claims, and the design and utility patent infringement damages awards—and reversed and remanded in part—with respect to trade dress dilution. Only the design patent infringement award is at issue here.

"patented design, or any colorable imitation thereof, to any article of manufacture for the purpose of sale" or the unlicensed sale or exposure to sale of "any article of manufacture to which [a patented] design or colorable imitation has been applied." 35 U. S. C. §289. It then makes a person who violates that prohibition "liable to the owner to the extent of his total profit, but not less than $250." *Ibid.* "Total," of course, means all. See American Heritage Dictionary 1836 (5th ed. 2011) ("[t]he whole amount of something; the entirety"). The "total profit" for which §289 makes an infringer liable is thus all of the profit made from the prohibited conduct, that is, from the manufacture or sale of the "article of manufacture to which [the patented] design or colorable imitation has been applied."

Arriving at a damages award under §289 thus involves two steps. First, identify the "article of manufacture" to which the infringed design has been applied. Second, calculate the infringer's total profit made on that article of manufacture.

This case requires us to address a threshold matter: the scope of the term "article of manufacture." The only question we resolve today is whether, in the case of a multicomponent product, the relevant "article of manufacture" must always be the end product sold to the consumer or whether it can also be a component of that product. Under the former interpretation, a patent holder will always be entitled to the infringer's total profit from the end product. Under the latter interpretation, a patent holder will sometimes be entitled to the infringer's total profit from a component of the end product.[2]

_____

[2] In its petition for certiorari and in its briefing, Samsung challenged the decision below on a second ground. It argued that 35 U. S. C. §289 contains a causation requirement, which limits a §289 damages award to the total profit the infringer made *because of* the infringement. Samsung abandoned this theory at argument, and so we do not address it. See Tr. of Oral Arg. 6.

A

The text resolves this case. The term "article of manufacture," as used in §289, encompasses both a product sold to a consumer and a component of that product.

"Article of manufacture" has a broad meaning. An "article" is just "a particular thing." J. Stormonth, A Dictionary of the English Language 53 (1885) (Stormonth); see also American Heritage Dictionary, at 101 ("[a]n individual thing or element of a class; a particular object or item"). And "manufacture" means "the conversion of raw materials by the hand, or by machinery, into articles suitable for the use of man" and "the articles so made." Stormonth 589; see also American Heritage Dictionary, at 1070 ("[t]he act, craft, or process of manufacturing products, especially on a large scale" or "[a] product that is manufactured"). An article of manufacture, then, is simply a thing made by hand or machine.

So understood, the term "article of manufacture" is broad enough to encompass both a product sold to a consumer as well as a component of that product. A component of a product, no less than the product itself, is a thing made by hand or machine. That a component may be integrated into a larger product, in other words, does not put it outside the category of articles of manufacture.

This reading of article of manufacture in §289 is consistent with 35 U. S. C. §171(a), which makes "new, original and ornamental design[s] for an article of manufacture" eligible for design patent protection.[3] The Patent

_____

[3] As originally enacted, the provision protected "any new and original design for a manufacture." §3, 5 Stat. 544. The provision listed examples, including a design "worked into or worked on, or printed or painted or cast or otherwise fixed on, any article of manufacture" and a "shape or configuration of any article of manufacture." *Ibid.* A streamlined version enacted in 1902 protected "any new, original, and ornamental design for an article of manufacture." Ch. 783, 32 Stat. 193. The Patent Act of 1952 retained that language. See §171, 66 Stat. 813.

Office and the courts have understood §171 to permit a design patent for a design extending to only a component of a multicomponent product. See, *e.g., Ex parte Adams*, 84 Off. Gaz. Pat. Office 311 (1898) ("The several articles of manufacture of peculiar shape which when combined produce a machine or structure having movable parts may each separately be patented as a design . . . "); *Application of Zahn*, 617 F. 2d 261, 268 (CCPA 1980) ("Section 171 authorizes patents on ornamental designs for articles of manufacture. While the design must be *embodied* in some articles, the statute is not limited to designs for complete articles, or 'discrete' articles, and certainly not to articles separately sold . . . ").

This reading is also consistent with 35 U. S. C. §101, which makes "any new and useful . . . manufacture . . . or any new and useful improvement thereof" eligible for utility patent protection. Cf. 8 D. Chisum, Patents §23.03[2], pp. 23–12 to 23–13 (2014) (noting that "article of manufacture" in §171 includes "what would be considered a 'manufacture' within the meaning of Section 101"). "[T]his Court has read the term 'manufacture' in §101 . . . to mean 'the production of articles for use from raw or prepared materials by giving to these materials new forms, qualities, properties, or combinations, whether by hand-labor or by machinery.'" *Diamond* v. *Chakrabarty*, 447 U. S. 303, 308 (1980) (quoting *American Fruit Growers, Inc.* v. *Brogdex Co.*, 283 U. S. 1, 11 (1931)). The broad term includes "the parts of a machine considered separately from the machine itself." 1 W. Robinson, The Law of Patents for Useful Inventions §183, p. 270 (1890).

B

The Federal Circuit's narrower reading of "article of manufacture" cannot be squared with the text of §289. The Federal Circuit found that components of the infringing smartphones could not be the relevant article of manu-

facture because consumers could not purchase those components separately from the smartphones. See 786 F. 3d, at 1002 (declining to limit a §289 award to a component of the smartphone because "[t]he innards of Samsung's smartphones were not sold separately from their shells as distinct articles of manufacture to ordinary purchasers"); see also *Nordock, Inc.* v. *Systems Inc.,* 803 F. 3d 1344, 1355 (CA Fed. 2015) (declining to limit a §289 award to a design for a "'lip and hinge plate'" because it was "welded together" with a leveler and "there was no evidence" it was sold "separate[ly] from the leveler as a complete unit"). But, for the reasons given above, the term "article of manufacture" is broad enough to embrace both a product sold to a consumer and a component of that product, whether sold separately or not. Thus, reading "article of manufacture" in §289 to cover only an end product sold to a consumer gives too narrow a meaning to the phrase.

The parties ask us to go further and resolve whether, for each of the design patents at issue here, the relevant article of manufacture is the smartphone, or a particular smartphone component. Doing so would require us to set out a test for identifying the relevant article of manufacture at the first step of the §289 damages inquiry and to parse the record to apply that test in this case. The United States as *amicus curiae* suggested a test, see Brief for United States as *Amicus Curiae* 27–29, but Samsung and Apple did not brief the issue. We decline to lay out a test for the first step of the §289 damages inquiry in the absence of adequate briefing by the parties. Doing so is not necessary to resolve the question presented in this case, and the Federal Circuit may address any remaining issues on remand.

## III

The judgment of the United States Court of Appeals for the Federal Circuit is therefore reversed, and the case is

remanded for further proceedings consistent with this opinion.

*It is so ordered.*